**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ronald Kelly Young, | ) | |
| Petitioner, | ) | |
| | ) | No. CIV 18-036-TUC-CKJ |
| v. | ) | |
| | ) | **ORDER** |
| Ryan Thornell, *et al.*, | ) | |
| Respondents. | ) | |
| | ) | |

On December 6, 2023, Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R & R") (Doc. 107) in which she recommended the Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 93) filed by Ronald Kelly Young ("Young") be denied and dismissed with prejudice. Young has filed Objections to the R & R ("Objections") (Doc. 110), and Respondents have filed a Response (Doc. 111).

I. *Report and Recommendation*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." The statute does not "require [] some lesser review by [this Court] when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 149-50,

1  (1985).  Rather, this Court is not required to conduct "any review at all . . . of any issue that

2  is not the subject of an objection."  *Id*. at 149.

3        Moreover, under Fed.R.Civ.P. 72(b), a district court may adopt those parts of a

4  magistrate judge's report to which no *specific objection* is made, provided they are not clearly

5  erroneous.  *Thomas v. Arn*, 474 U.S. 140, 151-153 (1985); *United States v. Reyna-Tapia*, 328

6  F.3d 1114, 1119 (9th Cir. 2003).  Young requests the Court conduct a "*de novo* review of the

7  issues raised in the R&R."  Objections (Doc. 110, p. 2).  Young states he will discuss specific

8  objections, but otherwise "stands on his prior briefing in this case."  *Id*.

9        No specific objections have been made to the background section of the R & R.  The

10  Court adopts those facts.

11

12  II.  *28 U.S.C.§ 2254 – Standard of Review*

13        Federal courts may consider a state prisoner's petition for habeas relief only on the

14  grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the

15  United States.  *See Reed v. Farley*, 512 U.S. 339, 347 (1994).  Indeed, a habeas corpus

16  petition by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim (1) resulted in a decision
> that was contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or (2) resulted
> in a decision that was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

20  28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).  General

21  improprieties occurring in state proceedings are cognizable only if they resulted in

22  fundamental unfairness and consequently violated a petitioner's Fourteenth Amendment right

23  to due process.  *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

24        This Court must review claims consistent with the provisions of the Antiterrorism and

25  Effective Death Penalty Act of 1996 ("AEDPA").  "The Act limits the ability of federal

26  courts to reexamine questions of law and mixed questions of law and fact." *Jeffries v. Wood*,

27

28                              - 2 -

114 F.3d 1484, 1498 (9th Cir. 1997). Indeed, the AEDPA creates "an independent, high standard to meet before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007), *citations omitted.* This Court may only overturn a state court finding if a petitioner shows by clear and convincing evidence that the finding was erroneous. *See* 28 U.S.C. § 2254(e)(1). An "unreasonable application of clearly established law" exists if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the case. *See Taylor*; R & R (Doc. 107, p. 4).

III. *Objections to Report and Recommendation*

Young asserts the Magistrate Judge erred in determining the claim of pre-indictment delay in the Second Amended Petition (Doc. 93) did not rest on the same operative facts as the claim in the timely original Petition, thereby concluding the claim is untimely, and determining the claim fails under 28 U.S.C. 2254(d). Young also objects to the determination the claim regarding the jailhouse snitch testimony is unexhausted and fails *de novo* review. Further, Young objects to the Magistrate Judge's conclusion that there is no clearly established law regarding whether the admission of a defendant's other acts would violate due process and that the state court's admission of the other act evidence relied on an interpretation of facts that was unreasonable. Young asserts the Magistrate Judge erred in concluding Young's sufficiency of the evidence claim is untimely because it does not share the same operative facts as Young's timely original claim of newly discovered evidence; further the Magistrate Judge erred in concluding the claim failed under § 2254 because the state court's determination sufficient evidence supported by the verdict was not an unreasonable application of federal law. Young also objects to the recommendation Young's juror bias claim fails because clearly established federal law does not guarantee a defendant a jury free of bias. Rather, Young asserts the Sixth Amendment unquestionably guarantees

- 3 -

1    a criminal defendant a fair trial by a panel of impartial, indifferent jurors.

2         Additionally, Young objects to the Magistrate Judge's conclusion regarding the

3    alleged ineffective assistance of Young's counsel.  Young asserts counsel failed to investigate

4    and present evidence that Young was in California around the time of the bombing and failed

5    to interview witnesses who were at the scene of the bombing.[1]  Young also objects to the

6    Magistrate Judge's recommendation that Young's *Brady v. Maryland*, 373 U.S. 83 (1963),

7    claim as to (1) third-party culpability evidence concerning Neil McNeice ("McNeice") and

8    (2) bank records showing Young and Phillips had a legitimate business relationship prior to

9    1997 does not merit habeas relief.  Lastly, Young objects to the conclusion of the Magistrate

10   Judge that Young has not presented sufficient evidence of actual innocence such that he

11   entitled to pass through the actual innocence gateway as set forth in *Schlup v. Delo*, 513 U.S.

12   298 (1995).

13

14   IV.  *Pre-Indictment Delay*

15   A.  *Timeliness of Claim*

16        Young asserts the Magistrate Judge erred in determining the claim of pre-indictment

17   delay in the Second Amended Petition (Doc. 93) did not rest on the same operative facts as

18   the claim in the timely original Petition.  A petitioner can avoid the time bar of the AEDPA

19   if an amendment made after the statute of limitations has run "relates back to the date of the

20   original pleading,"   *Walden v. Shinn*, 990 F.3d 1183, 1202 (9th Cir. 2021), *quoting*

21   Fed.R.Civ.P. 15(c)(1)(B).  Such amendment must assert "a claim . . . that arose out of the

22   conduct, transaction, or occurrence set out – or attempted to be set out – in the original

23   pleading."  *Id*.  The Ninth Circuit Court of Appeals has stated:

24   _____

25        [1]Young also repeats his claims from the Amended Petition that counsel failed to seek
26   DNA testing of the bomb fragments and a fingerprint comparison of prints found on Gary
     Triano's car and failed to withdraw because of a conflict of interest.  However, Young has
27   not specifically objected to the R & R as to these claims.

28                                          - 4 -

Claims brought in an amended petition for a writ of habeas corpus relate back to the original petition if they arise out of "a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, [545 U.S. 644, 659 (2005). "An amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." [*Id.* at 650].

*Schneider v. McDaniel*, 674 F.3d 1144, 1150 (9th Cir. 2012).

Young asserts the core operative facts of his pre-indictment delay claim are the "dates of the crime and indictment, and what happened during the delay" and his original Petition "contains a significant amount of factual development describing in detail what law enforcement did in the twelve years between [the victim's] death and [Young's] indictment." Objections (Doc. 110, p. 1), Petition (Doc. 1, pp. 14-19).   He asserts his original claims in the Petition set out the same core operative facts required to support his pre-indictment delay claim.

The Magistrate Judge stated:

The operative facts underlying [Young's] amended claim are that the state delayed in seeking an indictment, and that the delay was unjustified and prejudiced his defense. *See United States v. Lovasco*, 431 U.S. 783, 790 (1977).   [Young's] original claims were based on different operative facts, so his amended claim does not relate back.

[Young] raised six claims in his original petition.[1]   He alleged that he was denied due process when the state trial court (1) refused to grant a new trial based on new DNA and third-party culpability evidence, (2) refused to grant a new trial based on juror bias, and (3) admitted certain evidence at trial.   He also alleged that (4) his trial counsel were ineffective for not discovering certain evidence, for failing to present an identifiable defense at trial, and for not hiring an expert to testify at trial.   These claims involved actors other than the state, and they were based on acts or omissions that occurred after [Young] was indicted.   They do not concern preindictment delay or the effect of delay on [Young's] defense, so they cannot serve as a basis for relation back.   *See Walden v. Shinn*, 990 F.3d 1183, 1203 (9th Cir. 2021) (holding that the petitioner's amended claim did not relate back because the original claims involved different actors, alleged errors, and time periods).

[1][Young] technically raised five "grounds" for relief.   The Court discerns six distinct claims within those five grounds.

[Young] also alleged that (5) the state failed to disclose exculpatory evidence concerning his financial dealings with Pamela Phillips. While this claim concerns alleged misconduct by the state, the state's failure to satisfy its disclosure obligations is a post-indictment event that has nothing to do with preindictment delay.   Finally, [Young] alleged that (6) the police obtained evidence in violation of the Fourth Amendment, and that he was denied due process when that evidence was used against him at trial.   The disputed searches and seizures occurred during the alleged delay, but

the occurrence of delay is not a core operative fact supporting [Young's] claim that the police violated the Fourth Amendment.  These claims also cannot serve as a basis for relation back.  *See Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) (holding that while the new and original claims shared one fact in common, that was "not sufficient to conclude that they ar[o]se out of a common core of operative facts").

R & R (Doc. 107, p. 5).

The Magistrate Judge determined the "background facts that could have supported a claim of pre-indictment delay were not the operative facts of [Young's] original claims, so they do not provide a basis for relation back." *Id*. at 6.  Indeed, it is not sufficient that an amended claim relies on facts that coincidentally were included in the original claim, but they must be the operative facts. *Id*.; *see also Ross v. Williams*, 950 F.3d 1160, 1168 (9th Cir. 2020) (en banc).  Rather:

An amended petition "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." [Citation omitted.]  Instead, the Court held, both petitions must "state claims that are tied to a common core of operative facts." [Citation omitted.]

*Ross*, 950 F.3d at 1166, *quoting Mayle*, 545 U.S. at 650, 644.  Moreover, "[i]f an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Ross*, 950 F.3d at 1168.

Young asserts the dates of the crime and indictment, as well as what occurred during the delay, are the  core operative facts of his pre-indictment delay claim.  He further asserts the original Petition contains significant factual development describing in detail what law enforcement did in the twelve years between the victim's death and Young's indictment.  Similarly, the Magistrate Judge determined the government's purported unjustified delay in seeking an indictment and its alleged prejudice to Young's defense are the operative facts underlying Young's amended claim.  However, as discussed by the Magistrate Judge, these "core operative facts" of the amended claim are not core operative facts of the original claims.  In other words, both the original Petition and the Amended Petition do not "state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 644.

1     Further, Young's original Petition listed pre-indictment delay as a ground that had

2  been raised before the state appellate court.  Petition (Doc. 1, p. 2).  While Young included

3  (and thoroughly discussed) in his original petition other grounds listed that had been raised

4  by the state appellate court, Young did not include (or discuss) the pre-indictment delay in

5  his original petition.  There is no basis to conclude the attachment of the Arizona Courts of

6  Appeals opinion, which included a discussion of the pre-indictment delay claim, constituted

7  an attempt to include a pre-indictment delay claim.  In fact, where "an exhibit to the original

8  petition includes facts unrelated to the grounds for relief asserted in that petition, those facts

9  were not 'attempted to be set out' in that petition and cannot form a basis for relation back."

10  *Ross*, 950 F.3d at 1168.  Indeed, the inclusion of pre-indictment delay as a ground raised on

11  appeal and the attachment of the opinion indicates Young was aware of this possible issue,

12  but declined to include it in his request for § 2254 relief.  Even liberally construed because

13  Young filed the original Petition *pro se*, *Johnson v. Reagan*, 524 F.2d 1123 (9th Cir. 1975)

14  (especially where the pleader is *pro se*, the pleading should be liberally construed in the

15  interests of justice), Young's claim in the amended Petition and the claims in the original

16  Petition are not tied to a common core of facts.

17     The Court agrees with the Magistrate Judge that the pre-indictment delay claim does

18  not relate back based on the facts alleged in the original Petition.

19

20  B.  *Pre-Indictment Delay*

21     Even if Young's pre-indictment claim was timely, his pre-indictment claim is not

22  supported by clearly established federal law.  *See e.g. New v. Uribe*, 532 F. App'x 743, 744

23  (9th Cir. 2013) (deferring to the state court under § 2254(d)(1) because clear test has not been

24  set out by case law).  Initially, although Young argues otherwise, the Court agrees with the

25  Magistrate Judge that Young's pre-indictment delay claim is not supported by clearly

26  established law.  For example, one court has stated, "The Ninth Circuit has recognized that

27  the Supreme Court has not established a definitive test for evaluating due process claims

28

1   premised on pre-accusation delay, for purposes of federal habeas claims governed by 28

2   U.S.C. § 2254(d)(1)." *Evans v. Santoro*, No. 221CV04812SSSMAA, 2023 WL 3325946,

3   at *6 (C.D. Cal. Mar. 31, 2023), report and recommendation adopted, No.

4   221CV04812SSSMAA, 2023 WL 3322560 (C.D. Cal. May 5, 2023), *citations omitted*; *see*

5   *also New v. Uribe*, 532 F. App'x 743, 744 (9th Cir. 2013); *Naposki v. Adams*, No.

6   SACV1600391VBFAFM, 2017 WL 907606, at *6 (C.D. Cal. Jan. 30, 2017); *Hoover v.*

7   *Frauenheim*, No. 2:15-CV-00082-JKS, 2018 WL 1071170, at *8 (E.D. Cal. Feb. 23, 2018),

8   *aff'd sub nom., Hoover v. Ndoh*, 797 F. App'x 295 (9th Cir. 2019).

9        Even if the law was clearly established, Young has not shown the state court's decision

10  was contrary to, or involved an unreasonable application of, clearly established federal law.

11  The Court of Appeals of Arizona recognized a due process violation based on pre-indictment

12  delay requires showing a defendant has actually been prejudiced by the delay.   *State v.*

13  *Young*, 2 CA-CR-2010-0164, 2012 WL 642852 (Mem. Dec. 2/29/12); Answer (Doc. 26, Ex.

14  A).  The appellate court stated:

15       . . . Young argues he suffered prejudice by having to defend a "wrongful death civil
         suit prior to and concurrently with his criminal prosecution."  He contends the state
16       "gained a tactical advantage by waiting until the civil case was filed . . . so that it
         could learn from Young's and Phillips' answers to pleadings and discovery requests."
17       But he does not specify what the state learned from Young's responses or exactly how
         this prejudiced him.  *See Broughton*, 156 Ariz. at 398, 752 P.2d at 487 (no prejudice
18       based on mere speculation some witnesses' memories might have diminished or
         earlier testing of weapon could have been exculpatory); *State v. Hall*, 129 Ariz. 589,
19       592-93, 633 P.2d 398, 401-02 (1981) (no prejudice without specification of
         information lost by reason of delay), *overruled on other grounds by State v. Bass*, 198
20       Ariz. 571, 12 P.3d 796 (2000); *State v. Torres*, 116 Ariz. 377, 379, 569 P.2d 807, 809
         (1977) (no prejudice when defendant failed to show how testimony of unavailable
21       witness would have helped defense).

22       Thus, even assuming arguendo Young did not have to prove intentional prosecutorial
         delay to show a due process violation, he has not sustained his burden to show he
23       suffered actual prejudice from the delay.  The trial court did not abuse its discretion
         in denying his motion to dismiss.
24
    *Young*,  2012 WL 642852 at *4.
25
         Although Young asserts he was prejudiced because his civil wrongful death trial
26
    occurred prior to the criminal trial, Young has not shown there was anything the government
27

28                                            - 8 -

1    learned from the civil suit that prejudiced Young.  Further, the death of possible alternate

2    suspect McNeice, which occurred during the delay, did not prevent the defense from

3    presenting evidence regarding this other suspect.  Rather, Young generally asserts his

4    inability to call McNeice made it significantly more difficult for him to defend himself at

5    trial.  However, "speculative" claims of prejudice are insufficient.  *United States v. Marion*,

6    404 U.S. 307, 324–26 (1971).

7          As stated by the Magistrate Judge, Young has not shown this state court decision was

8    contrary or an unreasonable application of clearly established federal law, which requires a

9    showing of actual prejudice.  R & R (Doc. 107, p. 8).  Young's claim fails under § 2254(d).

10

11   V.  *"Jailhouse Snitch" Testimony*

12   A.  *Technical Exhaustion / Procedural Default*

13         Young claims his right to a fair trial by an impartial jury and due process, U.S. Const.

14   amends. V, VI, XIV, was violated by the state court permitting the improper and

15   untrustworthy jailhouse snitch testimony.  The Magistrate Judge stated:

> On direct appeal, [Young] argued that [Andre] Mims "clearly perjured" himself when he testified that Petitioner admitted to "bl[owing] that fucker up in his car." (Doc. 99-2 at 292–93, 297.)  Thus, [Young] alleged that he was convicted based in part on perjured testimony.
>
> [Young] did not, however, allege that the prosecutor did anything wrong with respect to Mims's testimony.  He also did not cite [*Napue v. Illinois*, 360 U.S. 264, 269 (1959)], which would have made clear that his claim was based on prosecutorial misconduct.  While [Young] cited "due process" and the Fifth and Fourteenth Amendments, those references were not sufficient to alert the state court to the *Napue* theory; due process has many contexts, and none of the references could have been expected to alert the state court to a claim of prosecutorial misconduct.  *See Gray v. Netherland*, 518 U.S. 152, 164–65 (1996) (explaining that the petitioner's case citations did not support his specific due process theory).  Lacking notice of both the legal theory and the relevant facts, the state court did not have the opportunity to address [Young's] *Napue* claim.  Therefore, his claim is unexhausted.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating that "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts").
>
> [Young] cannot return to state court to exhaust his claim. He did not raise it on direct appeal or in his first postconviction proceeding; as such, he has waived it.  Ariz.R.Crim.P. 32.2(a)(3).  His claim would also be untimely.  Ariz.R.Crim.P.

32.4(b)(3)(A).   Therefore, for purposes of federal review, his claim has been procedurally defaulted. . .

R & R (Doc. 107, pp. 9-10).  Arguing this claim is exhausted and not procedurally defaulted, Young objects.

Young argues he presented this claim on direct appeal by his extensive citations "to the trial testimony of [Andre] Mims and explain[ing] why it was improper."  Objections (Doc. 110, p. 9); further, Young referenced "due process and the Fifth and Fourteenth Amendments."  *Id*.  However, Young argued on direct appeal that the trial court erred by denying his motion for a mistrial after Mims testified that Young told him that he "blew that fucker up in his car."  Young's Opening Appeal Brief (Doc. 99-2, p. 69, ECF p. 293). Although he stated "the trial court *and the State* erroneously considered the preclusion to apply only to the four words "I got it done," *id*. at 72, *emphasis added*, he did not allege the prosecutor did anything wrong with respect to Mims's testimony.[2]  Rather, Young argued the statement violated a pretrial ruling of the court and the trial court erred in denying a motion for mistrial, *id*. at 72-73.  Further, as discussed by the Magistrate Judge, Young did not cite *Napue v. Illinois*, 360 U.S. 264, 269 (1959), as a basis for his claim.  Because Young did not provide more specific allegations or citations, Young did not make clear that his claim was based on prosecutorial misconduct.  *See e.g. Browning v. Baker*, No. 3:05-CV-0087-RCJ-WGC, 2013 WL 1414188, at *12 (D. Nev. Apr. 5, 2013), on reconsideration in part, No. 3:05-CV-0087-RCJ-WGC, 2013 WL 4736691 (D. Nev. Sept. 3, 2013); *Lesure v. Atchison*, 891 F. Supp. 2d 920, 926 (N.D. Ill. 2012).

---

[2]The state appellate court stated, "Young [argued] the court's pretrial preclusion ruling actually precluded 'any testimony where Young supposedly confesses to being responsible for the bombing.'  But the plain language of the court's ruling makes clear it was precluding only the statement, 'I got it done.'  And, in denying the motion for mistrial, the court reiterated its reasons for precluding the statement 'I got it done' and allowing the remainder of Mims's testimony.  Specifically, the court noted that Mims had conceded the 'got it done' wording may not have been accurate but he had affirmed the rest of his statements . . .," No. 2 CA-CR 2010-0164, 2012 WL 642852, at *11 (Ariz.App.  Feb. 29, 2012).

1    The Court agrees with the Magistrate Judge this claim has not been exhausted.   In

2    fact, as Arizona's procedural rules would now bar consideration of this claim, *see*

3    Ariz.R.Crim.P. 32.2(a)(3) and Ariz.R.Crim.P. 32.4(b)(3)(A), this claim is technically

4    exhausted, but procedurally defaulted. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011);

5    *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991), *holding modified by Martinez v.*

6    *Ryan*, 566 U.S. 1 (2012) ("A habeas petitioner who has defaulted his federal claims in state

7    court meets the technical requirements for exhaustion; there are no state remedies any longer

8    'available' to him.").

9    The Court agrees with the Magistrate Judge.  This claim is technically exhausted; it

10   is also procedurally defaulted. *Smart v. Hedgpeth*, 476 F. App'x 803, 804 (9th Cir. 2012)

11   ("the claim is technically exhausted but deemed procedurally defaulted").

12

13   B. *De Novo Review*

14   Moreover, even if the Court determined this claim was subject to review, Young's

15   claim would fail.  The appellate court stated:

16   The state contends Mims did not violate the trial court's order and, therefore, the
     denial of the motion for a mistrial was proper.  Young insists Mims did, arguing the
17   court's pretrial preclusion ruling actually precluded "any testimony where Young
     supposedly confesses to being responsible for the bombing."  But the plain language
18   of the court's ruling makes clear it was precluding only the statement, "I got it done."
     And, in denying the motion for mistrial, the court reiterated its reasons for precluding
19   the statement "I got it done" and allowing the remainder of Mims's testimony.
     Specifically, the court noted that Mims had conceded the "got it done" wording may
20   not have been accurate but he had affirmed the rest of his statements.  The court also
     emphasized that Young was able to cross-examine Mims about the fact he is a
21   convicted felon testifying in an attempt to get a benefit from the government and that
     it was ultimately up to the jury to decide his credibility.  The court also noted it had
22   afforded Young the extraordinary remedy for any error of allowing the polygraph
     results.  The court found there was no evidence the state knew Mims would make that
23   statement but that it was not materially different in substance than Mims's prior
     statements, and the court concluded a mistrial was not warranted. We find no abuse
24   of discretion in the court's ruling.

25   *Young*, 2012 WL 642852, at *11.

26   The Supreme Court has stated that "a conviction obtained through use of false

27   evidence, known to be such by representatives of the State, must fall under the Fourteenth

28                                          - 11 -

1    Amendment," and "[t]he same result obtains when the State, although not soliciting false

2    evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269. Indeed, the

3    Court "has consistently held that a conviction obtained by the knowing use of perjured

4    testimony is fundamentally unfair." *United States v. Agurs*, 427 U.S. 97 (1976). As stated

5    by the Magistrate Judge:

6        A *Napue* claim has three elements: "(1) the testimony (or evidence) was actually
         false, (2) the prosecution knew or should have known that the testimony was actually
7        false, and (3) the false testimony was material." *Reis-Campos v. Biter*, 832 F.3d 968,
         976 (9th Cir. 2016) (quoting *Jackson v. Brown*, 513 F.3d 1057, 1071–72 (9th Cir.
8        2008)). False testimony is material if "there is any reasonable likelihood that [it]
         could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97,
9        103 (1976).

10   R & R (Doc. 107, p. 10).

11       Although Young argues Mims's testimony was obviously false, Am. Pet. (Doc. 93, p.

12   7); *see also* Objections (Doc. 110, p. 3), the state appellate court recognized the trial court

13   "noted that Mims had conceded the 'got it done' wording may not have been accurate but he

14   had affirmed the rest of his statements." *Young*, 2012 WL 642852, at *11. In other words,

15   the exact words may not have been stated, but the meaning behind them may have been true.

16   The Court agrees with the Magistrate Judge:

17       [Young] has not shown that Mims's testimony was false. The testimony was new and
         unexpected, but that does not necessarily mean it was perjured. *See United States v.*
18       *Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) ("The fact that a witness may have made
         an earlier inconsistent statement . . . does not establish that the testimony offered at
19       trial was false."); *Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004) ("There are
         many reasons testimony may be inconsistent; perjury is only one possible reason.").
20
     R & R (Doc. 107, pp. 10-11). The Court finds the state court's determination on the falsity
21
     of the statement is not objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S.
22
     685, 698-99 (2002). Further, as it has not been shown the testimony was false, the Court
23
     does not conclude the state knew or should have known the testimony was false. This is
24
     supported by the statements of the prosecutor, as summarized by the Magistrate Judge:
25
26       . . . [Young] has not shown that the state knew or should have known that the
         testimony was false. At trial, the prosecutor stated that while he was surprised by
27       Mims's testimony, he had no reason to believe that Mims had perjured himself. (Doc.
         98-3 at 1731–33.) He explained that Mims and Young had a "trusted relationship"
28

that involved many conversations; that he never understood Mim's written affidavit to be the "sum and substance" of what Mims would testify to at trial; and that he never had the impression that "any admissions made by Ronald Young were restricted to the one statement I got it done." (*Id*. at 1729–33.) Petitioner does not explain why the prosecutor should be disbelieved. Notably, courts have found that inconsistencies between a witness's trial testimony and previous statements do not, standing alone, show that the prosecutor knowingly presented false testimony. *E.g., Gibson v. Beard*, 165 F. Supp. 3d 286, 309 (E.D. Pa. Feb. 29, 2016). Indeed, the prosecutor here explained that this was not his first experience "where a witness c[ame] forward with information that was not in a previous statement, or provided in a previous interview." (Doc. 98-3 at 1731, 1733.)

R & R (Doc. 107, p. 11).

Young also argues Mims's "false" testimony was material. However, as previously discussed, it has not been shown the testimony was false. Additionally, the Supreme Court has stated:

[There is a] line of cases [in] which the . . . Court has applied a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process. Since this case involves no misconduct, and since there is no reason to question the veracity of any of the prosecution witnesses, the test of materiality followed in the Mooney line of cases is not necessarily applicable to this case.

*United States v. Agurs*, 427 U.S. 97, 103–04 (1976). Indeed, consistent with the Supreme Court's "'overriding concern with the justice of the finding of guilt,' [*Agurs*, 427 U.S., at 112], a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

In this case, the truth-seeking function of the trial process was not corrupted. Rather:

. . . Mims's testimony, even if false, "was not material because his credibility [was] substantially called into question throughout trial. *Gentry v. Sinclair*, 705 F.3d 884, 903 (9th Cir. 2013). Mims was subjected to a blistering cross-examination, during which he contradicted himself several times. Under defense counsel's pointed questioning, Mims admitted that Petitioner was not "detail specific," and he agreed that he had not previously attributed the words "I blew that mother fucker up" to Petitioner during pretrial interviews. (Doc. 98-3 at 1766–68.) Mims also conceded that he had over 20 years left on his sentence for armed robbery, that his remaining avenues for relief were "long shots," and that he was hoping to trade his testimony for leniency. (*Id*. at 1761–65, 1773–74.) He also admitted that he had abused a previous girlfriend, that he had prior convictions for armed robbery and bribery of a public servant, and that he regularly violated prison rules by accepting payment for legal services. (*Id*. at 1763, 1768, 1770–71.) Mims's credibility was further undermined on the issue of his polygraph test. On cross-examination, Mims stated he was not

- 13 -

1
2
3
4

aware that the test results indicated that he had attempted deception, and he denied recalling anyone telling him that he had attempted deception. (*Id*. at 1754–59.) The jury was read a stipulation, however, proving that federal agents notified Mims about his test results. (Doc. 98-4 at 1233–34.) Petitioner's counsel reminded the jury of all these points during closing arguments. (*See id*. at 1491–92 ("Andre Mims is a stone cold liar. I have never seen in my career such a blatant liar presented by any prosecutor. Andre Mims was a known liar before he got on the stand.").)

5

R & R (Doc. 107, 11), *footnote omitted*.

6

7

8

9

10

11

12

13

Young asserts, however, that *Gentry* is inapposite because Mims's testimony was the only direct link between Young and the charged conduct. Yet, the direct evidence the Ninth Circuit was discussing in *Gentry* was as to the intent of the perpetrator of the crime, not whether Gentry was the actual perpetrator. Further, the Ninth Circuit's inquiry was whether there was evidence, other than the disputed evidence, of the issue. Here, there was other evidence of Young's guilt such that "[Mims's] testimony was not needed to prove" the question before the jury. *Gentry v. Sinclair*, 705 F.3d at 904. As discussed by the state appellate court:

14

15

16

17

18

19

20

Young contends the evidence established only that he was blackmailing Phillips and that no evidence connects him to Gary's murder. He contends the evidence that he was in Tucson the summer before Gary was killed only shows that he "[was] investigating [Gary]'s hiding assets in order to avoid paying child support on behalf of Phillips." But the jury was entitled to draw different inferences from that evidence. *See State v. Arce*, 107 Ariz. 156, 161,483 P.2d 1395, 1400 (1971) ("It was the function of the jury to decide what reasonable inferences could be drawn from the evidence."). . . And some of Young's own statements in his recorded conversations with Phillips suggest he was responsible for Gary's death. In one conversation, for example, he told her that he had "tried to help [her] on something that was . . . beyond what anybody else in the world would probably do" and now she is "living off the benefits of it."

21

22

23

24

25

26

27

*Young*, 2012 WL 642852, at *3. Evidence against Young included finding documents in Young's name in a van rented by Young. Aspen Police Detective James Crowley recalled "he had seen a map of Tucson and paperwork from [victim Gary Triano ("Triano") and co-defendant Pamela Phillips's] marital dissolution among the documents in the van. The van also contained a list of names of some of Gary's friends and family members and a note with more identifying information about two of the people on the list, as well as evidence that in July 1996, under an assumed name, Young had stayed in a hotel in the same area of Tucson

28

where [Triano] had lived." *Young*, 2012 WL 642852, at *1. Additionally, evidence revealed "that Young regularly had been receiving money from Phillips since [Triano's] death. Specifically, Young had maintained loan amortization schedules showing payments made on a debt of $400,000 owed to him. A forensic accountant examined that evidence, as well as Young's and Phillips's bank statements and Federal Express shipping records, and concluded the loan schedules were consistent with payments Phillips had been making to Young out of the proceeds of the life insurance policy. He also concluded the two had attempted to conceal the transactions." *Id.*

In such circumstances, the Court finds Mims's testimony that Young "blew that fucker up in his car[,]" *id.* at *10, is not material. Young is not entitled to habeas relief on his *Napue* claim.

VI. *Other Act Evidence*

A shotgun with a modified, shortened barrel was found within the van rented by Young. "At trial, the state argued that [Young] shortened the barrel to make it more concealable and suggested that [Young] intended for the shotgun to be a backup means of killing Triano if the bomb should fail." R & R (Doc. 107, p. 12). Young objects to the Magistrate Judge's conclusion that there is no clearly established law regarding whether the admission of a defendant's other acts would violate due process and that the state court's admission of this other act evidence relied on an interpretation of facts that was unreasonable.

The Arizona Court of Appeals determined it did not need to decide:

> whether the admission of the evidence was proper and under what specific ground because, even if error, its admission was harmless. First, the jury heard evidence Young had a gun in his possession when he was arrested in Florida. Consequently, even if, as Young argues, the evidence was not relevant and only used to show his character trait of possessing a gun, the evidence was cumulative in that regard. *See State v. Shearer*, 164 Ariz. 329, 339–40, 793 P.2d 86, 96–97 (App.1989) (finding harmless error when challenged evidence cumulative to, and consistent with, properly admitted evidence). Second, as stated above in the discussion about the sufficiency of the evidence, there was substantial other evidence Young committed the crimes.

1

2

> Therefore, the state established beyond a reasonable doubt the shotgun evidence "did not contribute to or affect the verdict." *State v. Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d 233, 236 (2009). Young is not entitled to relief on this ground.

3    *Young*, 2012 WL 642852 at *8.

4    Young argues that, contrary to the Magistrate Judge's conclusion that "there is no

5    clearly established law that addresses whether the admission of a defendant's . . . prior bad

6    acts would violate due process[,]" Ninth Circuit case law recognizes improper admission of

7    other act evidence may violate due process.  Objections (Doc. 110, p. 4), *citing McKinney*

8    *v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993) ("The admission of this [other act] evidence,

9    therefore, could have violated due process."); *Demetrulias v. Davis*, 14 F.4th 898, 907 (9th

10   Cir. 2021) ("The admission of character evidence violates due process only if there are no

11   permissible (i.e., non-propensity) inferences that the jury may draw from the evidence and

12   the evidence was of such quality as necessarily prevents a fair trial.").  However, "[f]or

13   purposes of § 2254(d)(1), "clearly established Federal law" includes only the holdings, as

14   opposed to the dicta, of the Supreme Court's decisions, *Pizzuto v. Yordy*, 947 F.3d 510, 525

15   (9th Cir. 2019), *quoting White v. Woodall*, 572 U.S. 415, 419 (2014). *citing* purposes of 28

16   U.S.C. § 2254(d)(1), as of the time of the relevant state-court decision.  *Yarborough v.*

17   *Alvarado*, 541 U.S. 652, 660–61 (2004).  The authority relied upon by Young is *dicta*.  As

18   such, it does not constitute clearly established federal law.  *Kipp v. Davis*, 971 F.3d 939, 951

19   n.8 (9th Cir. 2020).

20   Moreover, even if federal law had clearly established Young's claim, the state

21   appellate court did not decide whether the admission was proper.  Rather, it determined the

22   admission was harmless.  As discussed by the Magistrate Judge, the state court utilized a

23   harmless beyond a reasonable doubt standard, which is the same as the federal harmless error

24   standard. *Johnson v. Williams*, 568 U.S. 289, 301 (2013).  In such circumstances, the Court

25   concludes the appellate court's decision that the shotgun evidence was cumulative and, in

26   light of the substantial other evidence of Young's guilt, was not contrary to, or involved an

27   unreasonable application of, clearly established federal law.

28

1    VII.  *Sufficiency of Evidence*

2    A.  *Timeliness*

3           Young objects to the Magistrate Judge's conclusion this claim is untimely because it

4    does not share the same operative facts as Young's timely original claim of newly discovered

5    evidence.  In his original claim, Young asserted that newly discovered evidence – testing

6    revealed his DNA was not on bomb fragments recovered from the scene of the murder – and

7    the trial court's refusal to grant an evidentiary hearing, post-conviction relief, or a new trial

8    violated his due process rights.  His original Petition also included claims that the trial court

9    violated his due process rights by refusing to grant a new trial based on juror bias and

10   admitting certain evidence at trial.  Young's Petition also included claims his counsel were

11   ineffective prior to and during trial, the state unlawfully withheld exculpatory evidence, and

12   the police obtained evidence in violation of the Fourth Amendment.[3]

13          In his original Petition, Young asserted, "At the onset, it must be noted that there was

14   absolutely no direct evidence tying Young either to the bomb or to being in Tucson on or

15   around 11-01-96." Petition (Doc. 1, ECF p. 30 of 114).  The original Petition also discussed

16   information gleaned during the investigation.  However, Young did not discuss the evidence

17   presented at trial or argue that any circumstantial evidence presented was insufficient to

18   support his conviction.

19          While Young's claim of ineffective assistance of counsel prior to and during trial was

20   based in part on what occurred during trial, Young did not discuss the evidence presented at

21   trial or suggest that it was insufficient to support his conviction.  Additionally, Young's claim

22   the trial court erred in admitting certain evidence at trial, the core operative facts underlying

23   that claim is that the evidence was inadmissible, while the core operative facts of Young's

24   _____

25          [3]The Court notes the original Petition included a statement that a sufficiency of
26   evidence claim had been presented to the appellate court.  Petition (Doc. 1, p. 2).  In other
     words, Young was aware there was arguably a sufficiency of evidence claim, but did not
27   state one in the original Petition.

28                                              - 17 -

sufficiency of the evidence claim are the testimony and exhibits presented at Young's trial. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018), *citation omitted* (After *Jackson v. Virginia*, 443 U.S. 307 (1979) a § 2254 habeas petitioner must show, "after viewing the evidence [in the state trial] in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Deegan v. Warden, High Desert State Prison*, No. 217CV0604MCEACP, 2020 WL 2539187, at *4 (E.D. Cal. May 19, 2020), report and recommendation adopted, No. 217CV0604MCEACP, 2020 WL 5658669 (E.D. Cal. Sept. 23, 2020) (new claims derived from conduct that occurred at sentencing, while the original claims relate to conduct that occurred at trial); *Looney v. Swarthout*, No. CV 15-08201-AS, 2017 WL 10560479, at *8 (C.D. Cal. Aug. 24, 2017) (|Indeed, these two claims arise from distinct actions taken by different actors at different points in time, namely, the prosecutor's actions with respect to evidence prior to and at trial, and the sufficiency of the evidence presented at trial to support Petitioner's convictions.").

Additionally, although Young attached the appellate court decision, its discussion of the sufficiency of the evidence included "facts unrelated to the grounds for relief asserted in [Young's original] petition[;] those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Ross*, 950 F.3d at 1168, *citation omitted*.

The Court agrees with the Magistrate Judge that Young's sufficiency of evidence claim does not relate back to the original petition and this claim is untimely.

B. *Review of Sufficiency of Evidence Claim*

Even if the Court determined this claim was timely, Young would still not be entitled to relief. Young objects to the Magistrate Judge's determination he has not shown the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

1   Indeed:

2   > [*Jackson*] makes clear that it is the responsibility of the jury—not the court—to decide
    > what conclusions should be drawn from evidence admitted at trial.  A reviewing court
3   > may set aside the jury's verdict on the ground of insufficient evidence only if no
    > rational trier of fact could have agreed with the jury.  What is more, a federal court
4   > may not overturn a state court decision rejecting a sufficiency of the evidence
    > challenge simply because the federal court disagrees with the state court.  The federal
5   > court instead may do so only if the state court decision was "objectively
    > unreasonable."  *Renico v. Lett*, [559 U.S. 766, 773](2010) (internal quotation marks
6   > omitted).

7   *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

8       Young cites to *Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005), amended, No.

9   04-15562, 2005 WL 1653617 (9th Cir. July 8, 2005), to argue the "Ninth Circuit has warned

10  against permitting convictions supported wholly by circumstantial evidence to stand under

11  the Jackson standard."  However, in *Juan H.*, the Ninth Circuit did not determine a case

12  based solely on circumstantial evidence was impermissible.  Rather, the court determined the

13  circumstantial evidence presented at trial in *Juan H.* did not raise reasonable inferences that

14  supported the conviction.  *Juan H.*, 408 F.3d at 1277–78.  However, the Ninth Circuit has

15  also determined:

16  > "Circumstantial evidence and inferences drawn from it may be sufficient to sustain
    > a conviction."  *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.), *amended on*
17  > *denial of reh'g*, 798 F.2d 1250 (9th Cir.1986), *cert. denied*, 489 U.S. 1032, 109 S.Ct.
    > 1169, 103 L.Ed.2d 227 (1989).  Nevertheless, "mere suspicion or speculation cannot
18  > be the basis for creation of logical inferences."  *Id.*

19  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  This is similar to the Arizona law

20  applied by the appellate court in this matter:  "[Our supreme court has held that 'the probative

21  value of direct and circumstantial evidence are intrinsically similar; therefore, there is no

22  logically sound reason for drawing a distinction as to the weight to be assigned each.'"

23  *Young*, 2012 WL 642852 at * 2, *quoting State v. Harvill*, 106 Ariz. 386, 391 (Ariz. 1970).

24      Unlike in *Juan H.*, the circumstantial evidence presented in this case raised reasonable

25  inferences from which "*any* rational trier of fact could have found the essential elements of

26  the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  The appellate court stated:

27      And here, there was sufficient evidence from which the jury could have found Young

28                                          - 19 -

1    first conspired with Phillips to kill Gary and then carried out the killing.

2    Young contends the evidence established only that he was blackmailing Phillips and
     that no evidence connects him to Gary's murder.  He contends the evidence that he
3    was in Tucson the summer before Gary was killed only shows that he "[was]
     investigating [Gary]'s hiding assets in order to avoid paying child support on behalf
4    of Phillips." But the jury was entitled to draw different inferences from that evidence.
     *See State v. Arce*, 107 Ariz. 156, 161, 483 P.2d 1395, 1400 (1971) ("It was the
5    function of the jury to decide what reasonable inferences could be drawn from the
     evidence."). Moreover, a fellow inmate testified that Young had confessed to killing
6    Gary.  And some of Young's own statements in his recorded conversations with
     Phillips suggest he was responsible for Gary's death.  In one conversation, for
7    example, he told her that he had "tried to help [her] on something that was . . . beyond
     what anybody else in the world would probably do" and now she is "living off the
8    benefits of it."  There was sufficient evidence, both circumstantial and direct, from
     which a reasonable jury could have concluded Young conspired to commit, and then
9    committed, the murder.

10   *Young*, 2012 WL 642852 at *2–3.

11       "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the

12   evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic

13   facts to ultimate facts.'"  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), *per curiam*.  "[T]he

14   only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall

15   below the threshold of bare rationality.").  *Id*. at 656.  The Magistrate Judge summarized the

16   evidence against Young and determined "a rational juror could have found that the agreement

17   was for [Young] to kill Triano." R & R (Doc. 107, p. 17).  Further, "a rational juror could

18   have found that [Young] carried out the killing, and that he did so with premeditation." *Id*.

19   at 18. The Court agrees with this summary and conclusions.  Although, the "evidence against

20   [Young] was almost entirely circumstantial, [] it was extensive.  Viewing it in the light most

21   favorable to the prosecution, it was not objectively unreasonable for the state court to hold

22   that a rational juror could have found [Young] guilty of first-degree murder and conspiracy

23   to commit first-degree murder." *Id*.

24       This Court finds the state courts' determination that sufficient evidence was

25   presented from which rational jurors could have determined Young was guilty beyond a

26   reasonable doubt was not objectively unreasonable.  28 U.S.C. § 2254(d); *Bell v. Cone*, 535

27   U.S. 685, 698-99 ((habeas court is not to make its own independent judgment, but is to

28
                                          - 20 -

1  determine whether state court applied federal authority in an objectively unreasonable

2  manner).

3

4  VIII.  *Juror Bias*

5      Young objects to the Magistrate Judge's conclusion that Young's juror bias claim fails

6  because clearly established federal law does not guarantee a defendant a jury free of bias.

7  Rather, Young asserts the Sixth Amendment unquestionably guarantees a criminal defendant

8  a fair trial by a panel of impartial, indifferent jurors.

9      In his Amended Petition, Young argued that, not only is a juror's actual bias sufficient

10  to taint a trial, *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977), but also that bias may

11  be implied or inferred bias in extraordinary circumstances. *McDonough Power Equipment,*

12  *Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984) (Blackmun, Stevens, and O'Connor, JJ.,

13  concurring) (accepting that "in exceptional circumstances, that the facts are such that bias is

14  to be inferred").  As summarized by Young, one of the jurors:

15          responded on his questionnaire that he had never been convicted of a crime.  ROA
16          340.  He remained silent when asked if a family member had been convicted of a
            crime.  2/22/10 RT 96.  And when answering the biographical questions on "the
17          board," he stated that "number three doesn't apply to me in any way, shape or form."
            *Id*. at 98.  "Number three" is the question of the venireperson's marital status.  *Id*. at
18          97.  Effectively, [the juror] stated under penalty of perjury that:  1) he had never been
            convicted of a crime; 2) no family member of his had been convicted of a crime; and
19          3) he was not married.  [The juror] not only sat on the petit jury, but he was also
            elected the foreperson. 3/31/10 RT 2; 4/27/10 RT 3-4.

20  Petition (Doc. 93, p. 31).  Young argues bias should be presumed, *Dyer v. Calderon*, 151

21  F.3d 970 (1998), and "that the state court's determination that the juror did not commit

22  perjury, and did not prejudice [Young], is unreasonable."  Objections (Doc. 110, p. 7).

23      However, the Ninth Circuit has explicitly stated "[t]here is no clearly established

24  federal law regarding the issue of implied bias."  *Hedlund v. Ryan*, 854 F.3d 557, 575 (9th

25  Cir. 2017).  Therefore, Young is not entitled to § 2254(d)(1) relief.

26      Moreover, assuming *arguendo* clearly established federal law supports such a claim,

27  the Court would consider whether the state court's application of the federal law is

28                                          - 21 -

unreasonable.  The appellate court stated:

> . . . Before voir dire, prospective jurors filled out a jury questionnaire asking, inter alia, whether they or any family members or close friends had "ever been accused or convicted of a crime," and if so, whether the criminal justice system had treated the person fairly.

> [] After the verdicts, Young learned a juror had answered that question in the negative when, in fact, he had been convicted of a domestic-violence-related misdemeanor two years before. Rule 24.1(c)(3)(iii), Ariz.R.Crim.P., allows the court to order a new trial if a juror commits misconduct by "[p]erjuring himself or herself or willfully failing to respond fully to a direct question posed during the voir dire examination." However, a defendant is entitled to a new trial based on juror misconduct only if he "'shows actual prejudice or if prejudice may be fairly presumed from the facts.'" *State v. Lehr*, 227 Ariz. 140, ¶ 49, 254 P.3d 379, 390 (2011), *quoting State v. Dann*, 220 Ariz. 351, ¶ 115, 207 P.3d 604, 624 (2009).  "The trial court is in the best position 'to determine what effect, if any, alleged misconduct might have had upon other jurors' and whether a new trial should be granted."  *Brooks v. Zahn*, 170 Ariz. 545, 549, 826 P.2d 1171, 1175 (App.1991), *quoting Cota v. Harley Davidson, a Division of AMF, Inc.*, 141 Ariz. 7, 10, 684 P.2d 888, 891 (App.1984).

> [] In denying the motion, the trial court found that the juror's incorrect answer to one of the questions on the questionnaire did not rise to the level of perjury.  The court found no evidence "that the juror's answer was made with [his] knowledge that it was false and with [his] intention that it enhance [his] probability of being selected to serve as a member of the trial jury."  The court further found the incorrect answer had not resulted in prejudice to Young.  And, the court concluded that the existence of the juror's conviction, even if it had been known, would not have been a sufficient basis to strike him for cause.

> [] Young contends he has shown prejudice because knowledge about the juror's history with domestic violence would have affected how he used his peremptory strikes.  But this court has held that is an insufficient basis to prove prejudice entitling a defendant to a new trial.  *Catchings v. City of Glendale*, 154 Ariz. 420, 422–23, 743 P.2d 400, 402–03 (App.1987).  As long as the jury that decided the case ultimately was fair and impartial, we will not reverse a conviction based on the inability to exercise a peremptory strike on a particular juror.  *See State v. Eddington*, 226 Ariz. 72, ¶¶ 18–19, 244 P.3d 76, 83 (App.2010), *aff'd*, 228 Ariz. 361, 266 P.3d 1057 (2011).

> [] Young emphasizes that Phillips and Gary had a similar history of domestic violence and therefore the juror in question "could be considered more likely to believe that Phillips, the victim of abuse, was getting her due (and by extension, so was her new boyfriend Young)."  But Young's speculation is insufficient to show the juror was partial when deciding his case. And had Young been concerned with discovering potential jurors' biases or prejudices toward domestic violence victims, he could have inquired specifically about this topic during voir dire.

> [] Young concedes in his reply brief that the argument boils down to "whether the juror made a mistake on his questionnaire or whether he withheld information."  That determination is best left to the trial court.  *See Brooks*, 170 Ariz. at 549, 826 P.2d at 1175. We find no abuse of discretion in the court's denial of Young's motion for a new trial.

*Young*, No., 2012 WL 642852, at *9–10.  The trial court, in denying a motion for new trial, recognized the jury summons informed the juror he was not eligible to serve if he had been convicted of a felony office.  "Based on the information available to the [trial court] and the record before the [trial court, the Court concluded] it is not possible to conclude that this juror's response constituted perjury."  May 4, 2010, Ruling (Doc. 99-4, ECF p. 265), *State v. Young*, 2010 Ariz. Super. LEXIS 1069, *3.  The trial court also stated:

> Perjury is defined by A.R.S. § 13-2702.  Perjury must include a false sworn statement regarding a material issue.  The person making the statement must believe it to be false.  Here, it is just as likely and in the Court's view, probably more likely, that the juror either forgot about __ conviction; assumed that it was no longer an issue, given that __ had satisfied __ sentence; considered it a part of __ overall domestic proceedings; knew that it was not a felony and assumed that Question 7 only concerned felony convictions; or, any number of other possibilities. No proof has been offered to suggest that the juror in question knowingly and intentionally made a false statement for the purpose of minimizing the chance that __ would be stricken as a potential juror, or to otherwise participate in an effort to violate Mr. Young's rights.

> It can also be argued that the juror's statement may not have been "material", as that term is used and contemplated by A.R.S. §13-2701 and §13-2702.

> Obviously, it is unfortunate that this incident occurred. However, the record is devoid of any compelling evidence from which the Court can reasonably conclude that the juror's answer was made with __ knowledge that it was false and with __ intention that it enhance __ probability of being selected to serve as a member of the trial jury. In the Court's extensive experience in conducting voir dire and questioning potential jurors, it is far more common to find a potential juror who misunderstood a question or legitimately forgot relevant information than it is to find a potential juror who intentionally attempted to mislead the Court or counsel. In fact, this Court has never encountered a potential juror who it believed was being intentionally deceptive in an effort to undermine the legitimacy and fairness of a trial.

> Here, no follow-up questioning was requested by counsel of this juror, on this issue. While the Court is not critical of the defense, nor is it suggesting that they necessarily should have done so, clearly the defense had the ability to conduct a criminal history background check on every potential juror.  The defense could have then compared that information to the information on the juror's questionnaire.  As to this particular juror and __ particular criminal, conviction, the information was a matter of public record and available two years before the voir dire process in *State v. Young* began. Obviously, Mr. Young's counsel obtained information regarding this juror after the verdict.  That exact same information could have been obtained by Mr. Young's counsel regarding this juror, or any other prospective juror, well before jury selection and empanelment occurred.  Furthermore, such investigation could have been made during the course of the trial, which lasted several weeks.  Any juror misconduct would have been addressed, and if appropriate, a juror could have been excused, prior to the commencement of deliberations.

> It is impossible to say in a vacuum and without more information, what the Court

- 23 -

would have done had counsel for Mr. Young indicated during the voir dire process, "We challenge juror, __ for cause, based on a false answer which __ gave in __ Jury Questionnaire". Certainly, the Court would have questioned the juror individually. During the course of that questioning, the Court would have made its own determination as to why the incorrect answer was given. If the Court determined - as it has always done when presented with this type of issue - that the misstatement was the result of misunderstanding, confusion, forgetfulness or the like, the Court **would not** have sustained a challenge for cause as to that juror.

The appropriate legal standard is set forth in *Catchings v. City of Glendale*, 154 Ariz. 420, 743 P.2d 400 (App. 1987). The standard requires the moving party to establish that a juror's failure to provide an honest response to a material voir dire question was such that a correct response would have resulted in the Court sustaining a challenge for cause. Furthermore, the party complaining of the juror's incorrect answer must also show that he was prejudiced by the misconduct.

The Court does not believe that Defendant Young was prejudiced by juror __ incorrect answer as to the question at issue. The juror's answer must be considered in the context of all of the available and relevant information. That information reveals that __ sent some text messages to __ estranged spouse in the course of an acrimonious dissolution proceeding. While this Court certainly does not condone that conduct, having served for three years on the Domestic Relations Bench, such behavior is unfortunately very, very common in dissolution cases. Even assuming that __ intentionally sought to deceive the Court and counsel about __ misdemeanor conviction for this conduct, the Court does not believe that such could fairly or reasonably be characterized as unduly prejudicing this juror against Defendant Ronald Young.

In the case at bar, there was very limited testimony regarding domestic abuse. The testimony that was presented, suggested that the decedent, Gary Triano and co-defendant Pamela Phillips, had an acrimonious dissolution of their marriage and that their relationship included acts of domestic violence. There was further testimony indicating that Ms. Phillips had obtained an Order of Protection against Mr. Triano.

This Court is unable to reasonably conclude that any domestic violence which may have occurred between __ and __ spouse, together with any domestic violence that may have occurred between Mr. Triano and co-defendant Phillips, somehow affected __ evaluation of the evidence and charges in the case against Defendant Young.

Based upon all of the facts and the relevant law attendant thereto, as set forth in *Catchings v. City of Glendale, supra*, the Court respectfully concludes that there was no prejudice to Defendant Young as a result of juror __ misstatement on the Jury Questionnaire. The Court further concludes that the Defendant has failed to prove that had __ incorrect response been correct, that the Court would have necessarily, or likely, sustained a challenge for cause as to that juror. In fact, the Court's conclusion on that question is to the contrary.

*Id*. at 265-68.

The trial court's determination that the facts of the case did not establish the juror committed perjury and the appellate court's determination the trial court did not abuse its

- 24 -

discretion are not unreasonable.  Further, under the facts of this case, it was not an unreasonable application of the Sixth Amendment guarantee of a fair trial by impartial, indifferent jurors.  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  The Court agrees with the Magistrate Judge that Young is not entitled to § 2254(d)(1) or (d)(2) relief on this claim.

## IX.  *Ineffective Assistance of Counsel*

Young objects to the Magistrate Judge's conclusion regarding Young's ineffective assistance claims as to (1) counsel's failure to investigate and present evidence that he was in California around the time of the bombing, (2) counsel's failure to interview witnesses who were at the scene of the bombing, (3) counsel's failure to seek DNA testing of the bomb fragments and a fingerprint comparison of prints found on Triano's car, and (4) counsel's failure to withdraw because of a conflict of interest.

## A.  *Alibi Investigation*

As to witness George Rombach ("Rombach"), Young asserts the Magistrate Judge downplayed the strength of Rombach's testimony that Young was in California at the time of the bombing.  Young points out that, on November 5, 1996 (four days after the bombing) Rombach told police he had seen Young in California three or four days earlier.  Because of the delay in bringing the prosecution, Rombach was being interviewed 14 years later; Young asserts the jury would recognized the significance of the delay.  Further, Rombach's testimony would also have been strengthened by corroboration from other sources, which counsel also neglected to investigate. Specifically, Young's step-father and his mother, the Garans, would have corroborated the fact that Young was in California in October 1996. Additionally, Young sent faxes from Rombach's office in California dated both before and after the bombing.  In other words, Young's alibi would have been corroborated by three independent sources and counsel's deficient conduct denied Young the opportunity to present credible evidence of an alibi.  Such presentation would have also allowed counsel to

1   effectively cross-examine Detective Crawley, who presented his own narrative that

2   Rombach's statements were inconsistent.

3          However, the Court agrees with the Magistrate Judge that Rombach's testimony did

4   not establish an alibi for Young.   Rather, even the statement made four days after the

5   bombing failed to show Young was not in Tucson at the time of the bombing.   Similarly, the

6   testimony from the Garans and the fax evidence does not establish an alibi (e.g., mere

7   "impression" Young was in California in late 1996, fax dated almost two weeks prior to the

8   bombing.).   R & R (Doc. 107, p. 22).   "[C]ounsel could have had good reason for not

9   pursuing those investigations (e.g., they could have suspected that such evidence would have

10  been consistent with [Young's guilt])."   *Id*.   Further, as state by Respondents, "counsel

11  presented that evidence at trial through a state's witness. See Doc. 98-4, at 710. Moreover,

12  Young omits that Rombach also taught Young how to construct a pipe bomb. See Doc. 99,

13  at 52–55. Therefore even if Rombach could have provided an alibi, counsel reasonably chose

14  not to present him as a witness. See Doc. 99, at 309 (state court ruling)."   Response (Doc.

15  111, p. 9).   *See Cunningham v. Wong*, 704 F.3d 1143, 1158–59 (9th Cir. 2013) (finding that

16  counsel was not ineffective for failing to raise an alibi defense where the "proffered alibi

17  evidence [was] extremely weak" and "consistent with [the petitioner's] guilt").

18

19  B.   *Witness Investigation*

20         Young also argues the Magistrate Judge is incorrect in determining the claim

21  regarding eyewitnesses to the crime relies on hindsight.   Witness Keisho Kudo ("Kudo")

22  identified two persons at the scene; he picked those two individuals out of a number of

23  photographs.   The Magistrate Judge stated:

24         One final point: the Supreme Court has made clear that counsel's performance must
           not be evaluated with the benefit of hindsight. *Strickland*, 466 U.S. at 689.  [Young's]
25         claim makes sense only with the benefit of hindsight.  He argues that the killing was
           orchestrated by McNeice, and that the witnesses' descriptions match those of
26         McNeice's associates.  But [Young] learned that McNeice was investigated as a
           suspect only after he was convicted in 2010, and he alleges that the state withheld that
27         information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  [Young's]

28                                                - 26 -

counsel had no indication that McNeice was an alternative suspect and thus no reason to ask witnesses if they had seen his associates at the crime scene.

R & R (Doc. 107, pp. 23-24).   As counsel did not know pre-trial or during the trial of individuals that matched the descriptions of McNeice associates, the Court agrees with the Magistrate Judge that counsel was not ineffective for failing to investigate/interview to establish the presence of the other individuals.

C.  *DNA and Fingerprint Evidence*

Young states his "trial counsel also failed to test DNA and fingerprints found at the crime scene, which were tested in 2013 and did not match [Young].  The failure to test this exculpatory evidence was deficient performance, especially when compounded with the negligence in investigating [Young's] alibi."  Objections (Doc. 110, pp. 8-9).  However, Young has not made a "specific objection" to the R & R as to this issue.  *Reyna-Tapia*, 328 F.3d at 1119.  Nonetheless, the Court will briefly address this issue.

The Magistrate Judge stated:

> [Young] has not shown that counsel were deficient.  He recalls "counsel telling him that they did not need to conduct any investigation, as the State had no evidence tying [him] to the bombing."  Given that the prosecution had no direct evidence placing [Young] in Arizona, let alone at the crime scene, that was a reasonable strategy. Given that strategy, it plainly was reasonable for counsel not to investigate DNA and fingerprint evidence.  *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." (emphasis added)).  This claim also relies heavily on the benefit of hindsight:  [Young] knows now that the forensic evidence is not a match to him, but his counsel did not know that.  For all they knew, the forensic evidence could have placed him at the scene.

R & R (Doc. 107, p. 24).  Moreover, the Court also considers that, had the testing been completed prior to trial, it would arguably not contradict the evidence against Young. Rather, the possible involvement or guilt of others does not diminish the evidence against Young.

. . . . .

. . . . .

- 27 -

1

D.  *Conflict of Interest*

2

    In his Amended Petition, Young argued the conduct of counsel, who worked for the

3

public defender's office, was deficient for failing to withdraw because of a conflict of

4

interest.  Specifically, Young asserted a different public defender represented a "significant

5

suspect" in the case and made statements about that suspect to the media.  Although Young

6

has not made a "specific objection" to the R & R as to this issue, *Reyna-Tapia*, 328 F.3d at

7

1119, the Court will briefly address this issue.

8

    The Magistrate Judge stated:

9

10

11

> In the conflict-of-interest context, "[p]rejudice is presumed only if the defendant
> demonstrates that counsel 'actively represented conflicting interests' and that 'an actual
> conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S.
> at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  [Young] does not
> explain how the alleged conflict of interest affected counsel's performance.  Thus, he
> has failed to demonstrate prejudice.

12

13

R & R (Doc. 107, pp. 24-25).  This Court agrees with the Magistrate Judge:  Young has not

14

demonstrated prejudice.

15

16

E.  <u>*Brady* Violation</u>

17

    Young objects to the Magistrate Judge's recommendation that the *Brady* claims fail.

18

The Magistrate Judge stated:

19

20

> As for the third-party culpability evidence regarding Neil McNeice, many of the
> details offered by [Young] come from interviews conducted by Phillips's defense team
> after his trial was over; he does not cite or otherwise identify documents or witnesses
> concerning McNeice that the state had and withheld before trial.  He has the burden
> on his claim, and this omission means he has not met it.

21

22

R & R (Doc. 107, p. 26).  The Magistrate Judge reviewed the record and summarized

23

documents that may have been at issue.  This included, *inter alia*, that John Sigmon

24

("Sigmon") had claimed responsibility for the bombing, Sigmon had an associate named

25

"Ernie," who was believed to carry a firearm; however, it was not clear if this was McNeice

26

associate Ernie Avaloz.  Further, a friend of McNeice informed an FBI agent that McNeice

27

had a penchant for violence, had solicited the murder of several people, and wanted Triano

28

1  dead because he had defrauded McNeice out of $80,000.  R & R (Doc. 107, pp. 26-27).  The

2  Magistrate Judge stated:

> While this evidence establishes that McNeice had motive to kill Triano, it does not link McNeice or his associates to the bomb or the crime scene.  Furthermore, the jury heard testimony about others who had the same motive.  There was evidence that Triano had at least $4 million in debt and up to $20 million in unliquidated liabilities (Doc. 98-4 at 40, 911); that Triano owed money to "six or seven Las Vegas casinos" (Doc. 98-3 at 1422); that Triano had a deal with Gary Fears involving "Chinese gambling interests" (a deal which Triano's friend would have been "afraid" to do himself), and that Fears initially was the "primary suspect" in the murder (Doc. 98-3 at 933, 1421; Doc. 98-4 at 911); that Triano had lost money on an investment for Mexican investors (Doc. 96 at 79–80); and that others, including Mike Mariner, Michael Gardner, and Kevin Oberg, were suspects as well (Doc. 98-3 at 1383–84, 1388, 1419).  In view of these alternative suspects, the evidence concerning McNeice was not material.

10  R & R (Doc. 107, p. 27).  Young argues the Magistrate Judge erred in her determination that

11  Young had not identified the undisclosed documents because Young had pointed to several

12  boxes of information turned over to Phillips' counsel after Young's conviction.  However, the

13  Magistrate Judge remarked upon Young's failure to cite or otherwise identify documents or

14  witnesses concerning McNeice that the state had and withheld before trial.  As Young had

15  the burden to establish the claim, *see e.g. United States v. Jernigan*, 492 F.3d 1050, 1053 (9th

16  Cir. 2007), his failure to identify such documents or witnesses leads to a conclusion the

17  burden has not been met.

18      Additionally, the Magistrate Judge recognized that Young had access to his own bank

19  records.  The state made clear in pre-trial filings Phillips's payments to Young in exchange

20  for the killing would be at issue at trial and Young had an incentive to obtain his own records

21  if he thought they would undermine the state's case.  Further, as to Phillips's bank records,

22  the Magistrate Judge stated:

> Next, Phillips's bank records are not exculpatory.  The jury heard testimony from multiple witnesses that [Young] consulted with Phillips on her business, "Star Babies." (Doc. 98-3 at 2069–72, 2097–98, 2151; Doc. 98-4 at 207.)  Phillips's bank records would have been cumulative evidence of that relationship, and they would not have undermined evidence of the post-1996 relationship, which was categorically different.  As previously explained, the jury heard extensive evidence that Phillips's payments were part of an illicit agreement, not a legitimate one: the payments were made in cash, rather than by check or bank transfer (Doc. 98-4 at 551–52); each payment was comprised of multiple withdrawals of small amounts of cash (*id.* at

28                                          - 29 -

552–53); the payments were addressed to "Richard Perez," rather than to [Young] (*id*. at 585–86); and [Young] connected the payments to a "policy" and to Phillips sitting in a "women's prison for murder" (Doc. 96-5 at 24; Doc. 95-1 at 71; Doc. 98-4 at 1509–11).  In view of this evidence, the pre-1997 bank records were not exculpatory.  (And even if they were, they were not material because they would have tipped the scales in [Young's] favor only a negligible amount.)

R & R (Doc. 107, p. 26).

The Court agrees Young has not shown the reference to boxes of information identifies documents or witnesses the state had and withheld prior to trial or that the information contained within the boxes was material.   Additionally, in light of the circumstances and evidence, the bank records have not been shown to be exculpatory or material.

X. *Actual Innocence*

Young repeats his argument he is actually innocent.  However, he does not offer any specific objection to the R & R.  Nonetheless, the Court will briefly address this issue.

The Magistrate Judge discussed the minimal persuasive value of Mims's testimony and the shotgun evidence as well as the support the new DNA and fingerprint evidence provided to Young's defense.  The Magistrate Judge also discussed the weak new evidence concerning third-party culpability (e.g., credibility and conflicting statement of Morris, uncertain/imprecise statements of Kudo (although he picked out two individuals from multiple photographs), conflicting statements of other witnesses, unsupported allegations).  The Magistrate Judge summarized:

So, [Young] is left with the following facts:  McNeice, like others, had a motive to kill Triano; Capuano had the skills to build a bomb and had done bad things for McNeice; and the DNA and fingerprints were not a match to [Young].  As discussed in Section IV, the jury heard convincing evidence of [Young's] guilt.  [Young's] new facts do not "convincingly undermine" that evidence. [*Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013)]; *cf.* [*Gable v. Williams*, 49 F.4th 1315, 1328 (9th Cir. 2022)], (holding that the petitioner's gateway claim succeeded because "nearly all the State's key witnesses" recanted and another person gave multiple "detailed and compelling confessions").  Notably, [Young's] theory does not implicate Phillips at all, so it is unclear why Phillips would have allowed herself to be extorted by [Young] over many years, or why [Young] would have threatened to turn her in for murder if she did not pay.

1   R & R (Doc. 107, pp. 30-31).  As stated by the Magistrate Judge, Young "has not shown that

2   it is more likely than not that no reasonable juror would have convicted him if his new

3   evidence had been presented at trial."  *Id*. at 31; *see also House v. Bell*, 547 U.S. 518, 536

4   (2006) ("[P]risoners asserting innocence as a gateway to defaulted claims must establish that,

5   in light of new evidence, 'it is more likely than not that no reasonable juror would have found

6   petitioner guilty beyond a reasonable doubt.'").  Young's gateway claim fails and Young's

7   procedural defects are not excused.

8

9   XI.  *Certificate of Appealability ("COA")*

10          Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the

11   "district court must issue or deny a certificate of appealability when it enters a final order

12   adverse to the applicant."  Such certificates are required in cases concerning detention arising

13   "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking

14   a federal criminal judgment or sentence.  28 U.S.C. § 2253(c)(1).  Here, the Amended

15   Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State

16   court judgment.  This Court must determine, therefore, if a COA shall issue.

17          The standard for issuing a COA is whether the applicant has "made a substantial

18   showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district

19   court has rejected the constitutional claims on the merits, the showing required to satisfy §

20   2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would

21   find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

22   *v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  "When the district

23   court denies a habeas petition on procedural grounds without reaching the prisoner's

24   underlying constitutional claim, a COA should issue when the prisoner shows, at least, that

25   jurists of reason would find it debatable whether the petition states a valid claim of the denial

26   of a constitutional right and that jurists of reason would find it debatable whether the district

27   court was correct in its procedural ruling."  *Id*.; *see also Robbins v. Carey*, 481 F.3d

28

1143,1146-47 (9th Cir. 2007) (failure to object to magistrate judge's conclusions does not automatically waive appellate challenge)   In the certificate, the Court must indicate which specific issues satisfy the showing.  *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would not find it debatable whether the Amended Petition stated a valid claim of the denial of a constitutional right and the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.  A COA shall not issue as to Young's claims.

Any further request for a COA must be addressed to the Court of Appeals.  *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.


Accordingly, IT IS ORDERED:

1.      The Report and Recommendation (Doc. 107) is ADOPTED;

2.      Young's Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 93) is DENIED and DISMISSED WITH PREJUDICE.

3.      The Clerk of the Court shall enter judgment and shall then close its file in this matter, and;

4.      A Certificate of Appealability shall not issue in this case.

DATED this 28th day of March, 2024.


_____
Cindy K. Jorgenson
United States District Judge